## In the matter of the NORTH SHORE STATEN ISLAND FERRY COMPANY.

Upon the death of a stockholder in a corporation, intestate, and the appointment of administrators of his estate, and their acceptance of the trust, such administrators become, by operation of law, vested with the legal title to the stock, and consequently stockholders of the company, representing the estate of their intestate.

As such, they have all the rights appertaining to the ownership of the stock, one of which is, the right of voting at elections of directors of the company.

No formal transfer, on the books, is necessary to give this right.

The fact that the decedent held the stock subject to a trust or duty in favor of others does not affect the question. The right to vote follows the legal ownership, and the corporation has nothing to do with the equities between the owner and third persons.

Upon the death of a trustee of personal property, the trust devolves upon his representative. And as to everybody except the *cestui que trust*, such representative is absolute owner.

As trustee, however, he owes the duty of active management, for the protection

and preservation of the trust estate. And where that consists of stock in a corporation, the duty of voting at elections of directors thereof is too plain for argument.

APPEAL from an order made at a special term, setting aside and declaring null and void an election of directors of the North Shore Staten Island Ferry Company.

The affidavit of Mortimer L. Fowler, upon which the order to show cause was granted, alleged that George W. Wilson, late of the county of Richmond, deceased, died on the 15th of April, 1872, at his residence in said county, intestate. That on the application of his widow, Adele M. Wilson, to the county judge and surrogate of said county of Richmond, herself, the said Adele M. Wilson, and the deponent were, on the 23d day of April, 1872, duly appointed respectively the administratrix and administrator of said George W. Wilson, deceased, and thereupon entered upon their duties as such, and still continue to act as such administratrix and administrator; their appointment aforesaid never having been revoked. That The North Shore Staten Island Ferry Company, is a corporation duly incorporated under the act of the legislature of the State of New York, entitled "an act to authorize the formation of corporations for ferry purposes," passed April 9, 1853, being chapter 135 of the session laws of that year. That the capital stock of said company is divided into 12,500 shares, of which the deponent, in his own right, owns five shares. That at the time of the death of said George W. Wilson, and on and before the 11th day of April, 1872, and at the date of the election hereinafter mentioned, 5528 of the said shares stood in the name of said George W. Wilson, deceased, on the transfer books of the said company, and still so stand in his name. That on the 2d day of May, 1872, the annual election for fifteen directors (that being the number prescribed in the certificate of incorporation of said company) of said company for the coming year, was held at Port

Richmond landing, in said Richmond county, pursuant to notice duly published. That deponent attended such election, and produced and exhibited to the inspectors thereof a certificate of said county judge and surrogate of the due appointment of the said Adele M. Wilson and deponent as such administratrix and administrator as aforesaid, endorsed upon which certificate was a power of attorney to deponent to vote at said election, executed by said Adele M. Wilson, as such administratrix as aforesaid, the execution whereof was duly acknowledged. That thereupon the deponent, as such administrator and attorney, tendered a vote upon the shares of the said George W. Wilson, deceased, for certain persons named as directors. That thereupon one of the said inspectors referred to one of the transfer books of said company, and refused to receive said vote because the name of the deponent, as such administrator, did not appear on the said transfer book; although the name of said George W. Wilson did appear as the owner of the number of shares above stated. That the other inspectors, on being applied to, also refused to receive the said vote, for the same reason. That some time afterwards, and after other votes had been received, the deponent again applied to vote as representative of the estate of said George W. Wilson, deceased; that said vote was again refused, for the same reason as above stated, to wit, because the name of the deponent, as such administrator, did not appear upon the said transfer book. That thereupon, certain persons then present, other than the said inspectors, stated that they challenged and objected to said vote upon the ground above mentioned, to wit, the reason why said vote was refused by the inspectors, and also upon the ground that the said George W. Wilson was not the real owner of the stock standing in his name as aforesaid. And one of said persons further stated that he should urge said objections upon any proceeding which might be taken to set aside such election. And upon the

Matter of North Shore Staten Island Ferry Company.

deponent's again tendering his vote as the representative of George W. Wilson, in person, or as his proxy duly au-. thorized by said surrogate, at the same time producing and exhibiting his letters of administration, and an affidavit of the deponent of the death of said Wilson, that he might make such tender, claim and demand to vote in such capacity in all respects legally sufficient, the said person who had stated that he would urge objections as aforesaid, admitted that said tender, claim and demand were sufficient. That after the closing of the polls at said election, the said inspectors returned the result thereof, and certified that certain persons named in their certificate were elected directors of the company for the ensuing year.

The deponent further alleged, that had not his vote, as administrator as aforesaid, been rejected, none of the said persons, excepting William T. Garner, would have received votes sufficient for election, but that certain other persons (named) would have been elected; and that no person or persons other than the deponent offered or claimed the right to vote upon the stock so standing in the name of George W. Wilson, and the deponent, at the time of said election claimed, and now claims, that the action of said inspectors in refusing to receive his vote as aforesaid was erroneous and illegal.

Upon this affidavit, and the exhibits thereto attached, and the affidavit of W. H. Pendleton, an order was made, to show cause why the election of fourteen of the persons named in the certificate, as directors, should not be set aside, and declared null and void on the ground of improperly rejecting the vote of said Fowler, as administrator, &c., and why the persons certified to have been elected should not be permanently enjoined and restrained from action as directors of said company, by virtue of said election; and why a new election for directors of said

company should not be ordered, and further or other relief granted.

On the hearing of the order to show cause, before Justice Leonard, it was ordered and adjudged, that the inspectors of election erred in rejecting the vote of Mortimer L. Fowler, as administrator, and Adele M. Wilson, as administratrix, as tendered by said Mortimer L. Fowler, as administrator, and in not receiving the same when so tendered. And it was further ordered, that the election of fourteen of the persons named in the certificate, be, and the same was thereby set aside, and declared to be null and void, and that a new election be held for fourteen directors of the said company, in their places.

*B. W. Huntington*, for the appellants.

I. The inspectors had no power to accept the rejected vote, and their acceptance of it would have been a disobedience of the statute and void, if not a misdemeanor. The language of .the statute is: "In all cases where the right of voting upon any share or shares of any incorporated company of this State shall be questioned, it shall be the duty of the inspectors of the election, to require the transfer books of said company, as evidence of stock held in the said company, and all such shares as may appear standing thereon in the name of any person or persons, shall be voted on by such person or persons directly by themselves or by proxy, subject to the provisions of the act of incorporation." (1 *Edm. Stat.* 561, § 6. 2 *R. S.* 600, § 6, *5th ed.*)

II. It requires a statute to authorize an administrator to vote as a stockholder. In Massachusetts a statute allows it, in these words: "An executor, administrator, guardian or trustee, shall represent the shares or stock in his hands at all meetings of the corporation, and may vote as a stockholder." (*Gen. Stats.* [1860,] 385, § 11.) There is no such statute in this State. But the necessity of a statute is

recognized in our system of legislation. In many of our incorporation acts, the phraseology is substantially the same as in the Massachusetts statute. Thus in the following acts the provision is in these words: "Every such (holding stock) executor, administrator, guardian or trustee, shall represent the share of stock in his hands at all meetings of the company, and may vote accordingly as a stockholder." (*Manuf. Co's. Act, 2 R. S.* 662, § 40, *5th ed. Building and Loan Co's. Act, Id.* 783, § 13. *Building Co's. Act, Id.* 788, § 17. *Lake and River Navigation Co's. Act, Id.* 801, § 17.) In the *Railroad Co's. Act,* (2 *R. S.* 671, § 11, *5th ed.*,) and *N. Y. City Stage Route Co's. Act, Id.* 813, § 11,) the estates of the administrators, &c., are made liable as stockholders, while the representative right to vote is not given. But a comparison of the act relative to ferry companies, (*Id.* 811, § 60,) and the act relating to bridge companies, (*Id.* 733, § 5,) completely illustrates the difference in legislation; the ferry companies' act being the one under which this company was organized. The pertinency of these statutes is settled by authority. In the *Long Island R. R. Co. Election Case,* (19 *Wend.* 43,) the court derived "the understanding of the legislature" from an examination of the charters of incorporation from the earliest period.

III. "The shares of a deceased proprietor belong to his executors, and, in a sense, the executors become the owners of the shares; but they are not, within the meaning of the deed, proprietors of the shares—not personally subject to the liabilities annexed thereto, until they have been accepted as transferees and a transfer has been made to them. The executors being, in a sense, warranted by the deed, the owners, although not the proprietors of the shares of a deceased proprietor, are subject to the approbation of the directors, which is made necessary, entitled to require a transfer of the shares to themselves or a vendee, and may assent to a transfer to a legatee." (*In re*

*The Northern Coal Mining Company*, 13 *Beav.* 139.) For the distinction between stock owners and stockholders, and that the transfer book is the test, see *Schuyler case*, (34 *N. Y.* 80;) *Jones* v. *Terre Haute R. R. Co.*, (17 *How.* 529.) The by-laws of this company fix the same rule.

IV. The provisions of the ferry companies' act as to personal liability are very simple; and although they have not been construed in this State with reference to the liabilities of the estates of deceased stockholders, the question has been raised in Massachusetts under a similar provision, and it has there been held that the stockholder's liability ceases upon his death. Our ferry corporations' act (2 *R. S.* 809, § 70, *5th ed.*) merely makes "stockholders" liable for debts due laborers, &c., and to creditors to the amount of their stock for all debts and contracts until the whole amount of the capital stock should be paid in and certificate filed; the same provision being constructively applicable to increase of stock. By the Massachusetts act of 1808, if the corporation, within fourteen days after demand, does not show property sufficient to satisfy any execution, the same may be levied upon the body or estate of any member of the corporation. *Held*, that the estate of one who "had ceased by his death to be a member of the corporation before the suit was brought," was not liable within the intent of the statute. (*Child* v. *Coffin*, 17 *Mass.* 64.) The case of *Ripley* v. *Sampson*, (10 *Pick.* [27 *Mass.*] 371,) went further, and held that the statute did not affect the estate of a deceased corporator at all, and that the administrator could not be allowed in his account for contributory payments to make up a deficit against the corporation. Cases in this State where the estates of deceased corporators have been held liable, have been under different and more stringent statutes than the ferry companies' act, and the case of *Bailey* v. *Hollister*, (26 *N. Y.* 112,) is not contrary to the above, because there the charter allowed debts " to be recovered of

the stockholder who is such when the debt is contracted," and after the death of the stockholder the stock was actually transferred to his estate upon the stock ledger, and his administratrix was drawing dividends under the transfer when the debt was contracted.

V. It is a grave question, and unsettled, whether an administrator can or ought to make the estate of his intestate a stockholder in a corporation, without a statute authorizing him to do so. (*Ang. & A.* § 533. 5 *Taunt.* 581.) In *Ripley* v. *Sampson,* (*supra,*) his duty whether or not to pay an assessment (which is a lien on the share) is said to be indicated by the interests of the estate. By the ferry companies' act, shares are forfeitable if calls are not paid, and the capital may be increased so that calls are possible in this case. The administrator could not justly make the estate he represents liable on Garner's shares, nor, unless the interest of the estate required it, upon its own shares.

VI. The company is, by act of incorporation, which is a contract, (*Dartmouth College* v. *Woodward,* 4 *Wheat.* 518; *Hamilton* v. *Kutte,* 5 *Bush,* 458,) entitled to insist that a stockholder shall have no more votes than he owns shares. The act is subsequent to the act of 1825 relating to the transfer books; and if the court can go behind the transfer books for the purpose of getting at the right of Fowler to vote, it can go behind them to ascertain whether Wilson himself was a qualified voter by the act of incorporation as a stockholder, and owning the stock standing in his name. The inspectors are confined to the transfer books by the statute, but the court goes behind them, (*ex parte Holmes,* 5 *Cowen,* 426,) and behind the ballots in a State canvass, to ascertain the intentions of the voters. (*The People* v. *Cook,* 8 *N. Y.* 80, 81, *et seq.*) The statute authorizing these proceedings requires such order as justice and right demand, and this includes going behind the transfer books.

VII. Neither Wilson nor his administrator owned these

shares in the sense of the ferry companies' act, or bridge companies' act, nor in the general legislative sense. (*Stover* v. *Flack*, 41 *Barb.* 162.) They were not recognized as, and were not, assets. (*Touch.* 496. 2 *Williams' Executors*, 1496. 8 *Serg. & R.* 402. 3 *Brev.* 495. 42 *Ala.* 401.) One who has not a substantial interest in shares cannot vote, without the concurrence of the real owner. (*Philips* v. *Wickham*, 1 *Paige*, 590.) Membership in a corporation is personal, and does not go to the administrator, within 1 *Wms.* 727, 793.

VIII. The right of voting by proxy is not a common law right, but depends upon legislative sanction. (*Angell & Ames*, §§ 128, 130, *and cases cited.*) The only proxy at common law was by peers of the realm. An executor of a peer would hardly be recognized in the house of lords as his proxy. By the ferry companies' act, "the election shall be made by such of the stockholders as shall attend for that purpose, either in person or by proxy." A dead man cannot attend, and is not a stockholder.

IX. The incorporating act says, that transfers shall be according to the by-laws; and the by-laws prescribe the conditions of transfer. Wilson was only a trustee. His administrator cannot be more than a successor in the trust. The resignation of one trustee and election of another do not work a transfer, within any known rule of law. The transfer must be made by an assignment on the transfer books. (*Mohawk and Hudson R. R. Co.*, 19 *Wend.* 146.) An administrator is the agent of the law to make this transfer either to himself, as administrator, or as trustee, or to some one else. (*Middlebrook* v. *Merchants' Bank*, 3 *Keyes*, 135. *Dayton on Sur.* 304) But, until he makes it, although he has the estate, the stock has no voting capacity under the act of incorporation, which, as shown above, is a contract; nor, under the by-laws, which are a part of the act. The corporation can and does insist upon this contract. It is intended for the security of the

company. (*Duke* v. *Cahaba Nav. Co.*, 10 *Ala.* 82.) The holder of stock, though owner as against the assignor, does not have the legal title, as against the corporation, until the transfer takes place. (*Conneau* v. *Guild Farm Oil Co.*, 3 *Daly*, 220.) And the by-laws regulating transfers are a contract between the company and every share owner, whether holder or not, (*Schuyler's case, supra,*) the breach of which in that case made the company liable to Surgit, one of the aggrieved parties.

X. The provisions of the voting act, and of the ferry companies' act, requiring the name to be on the transfer book, and limiting the votes of stockholders to the number of shares they own, are peremptory and reasonable, and can be complied with by administrators and all other parties. Courts, therefore, have not the legal power to disregard them. (*Matter of Empire City Bank*, 18 *N. Y.* 215. If the incorporating acts are defective in not providing for cases of death after closing the transfer books, the legislature must supply the remedy. The argument from necessity is not tolerated in corporation cases. (*L. I. Railroad*, 19 *Wend.* 37.)

XI. There is no case in this State where a corporate election has been set aside for rejecting the vote of a person whose name was not on the transfer books. Most of the cases are cited *supra ;* see also *Ex parte Jacob Barker*, (6 *Wend.* 509,) where the name was on the books, though as trustee ; *Ex parte Willcocks*, (7 *Cowen*, 402,) where the pledger's name was on the books. In the *L. I. Railroad case*, (*supra*,) although the challenged voter had done all he could to get his name on the books and transfer had been wrongfully refused, the election was not set aside on that ground, but because his vote on proxies of stock on the books was rejected. In this case the administrator made no attempt to effect the transfer; if he had any equities and was refused transfer because the books were closed, the courts would have helped him if possible, and

relieved the transfer officer of responsibility. But both his intestate and Garner were at least criticisable for leaving the stock in Wilson's name, Wilson being of inadequate estate to protect the company, and both he and Garner contemplating a misuse of the shares.

XII. "The right of voting at elections for corporate officers, conferred by the charter, is not to be tested by the mere ownership of stock, but the transfer of it must be patent upon the stock book. The registry alone confers the right to vote." (*Monsseaux* v. *Urquhart*, 19 *La.* 482,) decided upon the New York authorities.

XIII. Whatever personal interest Wilson had in this stock was as a partner with Fowler. If stock owned by a partnership stands in the name of one partner and he dies, his administrator cannot vote upon it. (*Allen* v. *Hill*, 16 *Cal.* 113.)

XIV. The incorporating act defines as the body corporate, "the persons signing such certificate and such others as may become stockholders." An administrator who merely has shares in his hands as assets, which is not this case, is not, within the statutes and decisions of this State and the by-laws of this company, a stockholder in a corporation of this kind. Under our judicial decisions and system of legislation, a special definition of "stockholder" as used in the moneyed corporations' act has been made necessary; which shows that a statute is required to enlarge the legal meaning of the term.

XV. In England, by statute as far back as George I, no person to whom shares have been transmitted by death or bankruptcy, can receive dividends or vote until his title is registered in the books of the proper company. (5 *Exch.* 129.)

XVI. In the matter of accepting the votes of only such persons as appear by name on the transfer books, the act of the inspectors is purely ministerial. (*Mohawk R. R. Co.*, *supra.* *The People* v. *Cook*, *supra.* *Matter of Cecil*, 36 *How.* 478.) Their act in this case having been entirely

Matter of North Shore Staten Island Ferry Company.

legal, the appellants have a legal title to the office, and cannot be ousted under the statute, unless "justice and right" require it. Justice and right are entirely on the side of the appellants, as against these fictitious stockholders. The relation between directors and stockholders is that of trustee and *cestui que trust.* (*Butts* v. *Wood,* 37 *N. Y.* 317;) and turning out veterans and surrendering the management to directors who merely hold five shares apiece, colorably, and by gift from a speculator, in his interest, and in evasion of the statute requiring fifteen directors (for they make the speculator a majority of the board,) is giving the lamb to the wolf. The Supreme Court in *Ex parte Holmes,* (*supra,*) reprobated wielding stock for the purpose of an election. Transfers of stock for electioneering purposes are against public policy; are pronounced against by the legislature in several instances; and are held to be void as against those instrumental in bringing them about. (*Sabin* v. *Bank of Woodstock,* 21 *Vt.* 361.)

*Sidney S. Harris,* for the respondents.

I. The inspectors erred in refusing to receive the vote of the administrators of the estate of George W. Wilson, deceased. Mr. Wilson owned 5528 shares of stock, and, if the vote of the administrator had been received, none of the directors declared elected by the inspectors would have been so elected, except Mr. Garner, who was on both tickets, and the respondents would have been elected.

II. The facts stated in the moving papers of the respondents are admitted, and the sole question is, whether an administrator can vote on the stock of the intestate, coming into his possession, upon the production of his letters of administration and certificate of the surrogate, that he has qualified, and is acting as administrator upon the estate of the intestate. At common law the administrator has the right to vote, although the stock does not stand in his name. Every person in whom the legal title stood, at

common law, had the right to vote. (*Angell & Ames on Corp. p.* 70, *2d ed.*)   The statute making the transfer books evidence of the ownership of stock, was passed to afford corporations a reasonable certainty as to who were stockholders.   In case stock had been hypothecated or otherwise pledged and several persons claimed the right to vote, the transfer books were generally to be followed as a guide in determining who were the owners of the stock. This, it has been held, is not an absolute rule without exception. (*Ex parte Holmes*, 5 *Cowen*, 426, 434. *Ex parte Willcocks*, 7 *id.* 410.)   The statute may be said to regulate the voluntary transfers of stock, and was intended to furnish a guide to inspectors as to voluntary dispositions or transfers of stock by persons who were owners in their own right, but it is submitted that in cases of involuntary transfers, by act of law, as by the death of a stockholder, where the title to the stock is cast, by law, upon the administrator in a representative capacity, the statute has no application.   Executors and administrators are not within the mischief intended to be remedied by the statute requiring registration of stock.   They represent all parties beneficially interested in the estate. (*Bayard* v. *Farmers' Bank*, 52 *Penn.* 232.)   And there is no danger of fraud or wrong being done to any one by allowing them to vote. They are directly under the control and supervision of the courts, and the statute does not apply to them.   The statute does not require transfers in such cases.   The death of a stockholder does not work such a transfer as requires registration by the administrator.   It is not such a transfer as a living stockholder makes when he sells the stock. The administrator comes by operation of law in place of the deceased, as the representative of his estate, and the certificate of the surrogate and letters are conclusive evidence of his right to vote, and the inspectors are required to recognize them as giving the requisite authority.   This is necessarily so, as the statute making the transfer books

evidence generally, of the right to vote, (2 *R. S.* 600, § 6, *5th ed.*,) is in derogation of common right, and must be strictly construed. Before the statute, whoever had the legal title could vote, and the statute, making the transfer books evidence, must be strictly construed, and restricted to cases within the letter of the act, and should not be extended to cases not within the spirit of the act. (*The Bridgewater and Utica Plank Road Co.* v. *Robbins*, 22 *Barb.* 662.) This is especially so, when the act is in favor of corporations. It cannot be extended by equitable construction, even to cases within the mischief of the act. (*Bridgewater and Utica Plank Road Co.* v. *Robbins, supra.*) The right to vote by proxy is not a common law right, and the statute in that regard, is enabling, and should be liberally construed.

III. The statute, (2 *R. S.* 600, §§ 5, 6,) has been in force nearly fifty years, and thousands of cases must have arisen, calling for the application of the statute to administrators and executors, and the practice has been so uniform and general, that no case has arisen where the right of the administrator to vote has been denied by any decision ; on the contrary, it has been taken for granted that administrators and executors could vote. See *People* v. *Tibbetts*, (4 *Cowen*, 359,) where the vote of the administrator was challenged, but abandoned, and the learned counsel on each side conceded the right of the administrator to vote. (*See remarks of Chancellor Jones on p.* 364, *and Abraham Van Vechten, on p.* 374.)

IV. Presumptively, all stock should be represented, or at least is entitled to be voted upon at an election of officers. It is not lawful to take away the right of any share to be voted upon. Hence, by-laws infringing upon this right have been declared void. (*People* v. *Kip*, 4 *Cowen*, 382.) The inspectors having refused the right of the administrator to vote, the death of Mr. Wilson is made to work a forfeiture of the right to vote on his stock.

V. The statute gives the right to vote by proxy. If Wilson were living, he could have given a proxy; but, having died, the law has constituted his administrators his attorneys or proxy. They have received letters and certificates, which constitute a perfect legal proxy, by act of law, the administrators being invested, in a representative capacity, with all the authority the intestate had before his death, and are of equal force and validity as a proxy given by Mr. Wilson, if living. If an administrator asks to have the stock registered in his name, it is because he is the representative and proxy of the intestate, or of his estate, and not because he has any title in his own right. He comes in by act and operation of law, (*The People* v. *Tibbetts, supra,* 374,) and not as a purchaser. As to meaning of *proxy,* see *Burrill's Law Dictionary, title Proxy; Bouvier's Law Dictionary, title Proxy; Webster's Dictionary; Worcester's Dictionary.* The statute (2 *R. S.* 807, § 60, *5th ed.*) under which the company is incorporated provides, that " the election shall be made by such of the stockholders as shall attend in person or by proxy." The administrator is invested with all the authority the intestate had. (*Diven* v. *Duncan,* 41 *Barb.* 524. *Bailey* v. *Hollister,* 26 *N. Y.* 112. 41 *Barb.* 490.) He can sell the stock, and transfer it to the purchaser; and is, in his representative capacity, by legal appointment, *ex necessitate,* the legal proxy and attorney to do all acts the intestate could do, as well respecting the sale of the stock as voting upon it. It would seem as if the question were very plain. The administrators are, *ex necessitate,* the legal proxies and attorneys of Wilson and his estate, and the production of the letters and certificate of the surrogate are of equal force and validity as the proxy of Wilson, if living; and no registering of the stock is required, or would increase in any way the authority of the administrators to vote. They are the lawful representatives of Wilson, and the letters and certificate are the proxies, or power of attorney to

Matter of North Shore Staten Island Ferry Company.

vote on the stock. And where there are two administrators, both being invested with equal authority, one could vote on the stock, unless the other objected; but, here, the administratrix invests Mr. Fowler with the authority to act for her, and consents to his voting on the stock. This agrees with the universal practice in such cases.

VI. Whether Mr. Garner or any one else has any interest in the stock standing in the name of Mr. Wilson, is wholly immaterial. (*Long Island R. R. Co.*, 19 *Wend*. 37. *The Mohawk & H. R. R. Co.*, *Id.* 135. *Ex parte Willcocks*, 7 *Cowen*, 402. *Ex parte Holmes*, 5 *id.* 426. *The People* v. *Tibbets*, 4 *id.* 358. *The People* v. *Kip*, *Id.* 382, *note*.) In such a case, the stock would devolve upon the administrator, and he would still represent it. (*Bunn* v. *Vaughan*, 3 *Keyes*, 345.) The order should be affirmed, with costs. (*Act of* 1854, *Laws of* 1854, 952, § 3.)

*By the Court*, GILBERT, J. The statute under which this company was incorporated, (3 *Edm. Stat. p.* 872,) provides that the stock of the company shall be deemed personal estate, (§ 10,) and that each stockholder shall be entitled to as many votes as he owns shares of stock in said company. (§ 4.)

Upon the death of Mr. Wilson, the intestate, and the appointment of Mr. Fowler and Mrs. Wilson as administrators of his goods, &c., and their acceptance of the trust, the latter became, by operation of law, vested with the legal title to the stock in question, and consequently stockholders of the company, representing the estate of the decedent. As such they had all the rights appertaining to the ownership of the stock, one of which was the right of voting at elections of directors of the company. (*The People* v. *Tibbets*, 4 *Cowen*, 364. *Baily* v. *Hollister*, 26 *N. Y.* 112, *Middlebrook* v. *Merchants' Bank*, 3 *Keyes*, 135.)

No formal transfer on the books was necessary to give this right.

The fact that the decedent held the stock subject to a trust or duty in favor of others does not affect the question.

The right to vote follows the legal ownership, and the corporation has nothing to do with the equities between the owner and third persons.

Upon the death of a trustee of personal property, the trust devolves upon his representative. And as to everybody except the *cestui que trust*, the latter is absolute owner. (*Bunn v. Vaughan*, 3 *Keyes*, 345. *Ex parte Wlilcocks*, 7 *Cowen*, 402.) As trustee, however, he owes the duty of active management for the protection and preservation of the trust estate. Where that consists of stock in a corporation the duty of voting at elections of directors thereof is too plain for argument.

The order appealed from should be affirmed, with costs.

[Second Department, General Term, at Brooklyn September 9, 1872. *J. F. Barnard, Gilbert* and *Tappen,* Justices.]