### *In re* SANTA EULALIA SILVER MIN. Co.[1]

(*Supreme Court, General Term, First Department.* January 28, 1889.)

1. CORPORATIONS—TRUSTEES—ESTOPPEL TO DENY ELIGIBILITY.
   Where a person has, with the knowledge and consent of the stockholders, acted as one of the trustees of a corporation, such stockholders are estopped to question his eligibility to the office of trustee, for the purpose of defeating a petition for dissolution of the corporation, on the ground that it was not signed by a majority of the trustees, as required by Code Civil Proc. N. Y. §§ 2419, 2422.

2. SAME—INSOLVENCY—INVENTORY—OMISSIONS—GOOD FAITH.
   Under Code Civil Proc. N. Y. § 2421, requiring that the petition for dissolution of a corporation must have annexed a full, just, and true inventory of all the property of the corporation, and a statement of all the books, vouchers, and securities relating to its property, the question is not whether there has been a technical and accidental omission in the inventory of some item of property, or of some book relating to property, but whether, if any omissions exist, they show lack of good faith on the part of the petitioners, and afford evidence of a fraudulent purpose. If they do not, the defect is not jurisdictional, and may be cured by evidence at the hearing.

Appeal from special term, New York county.

This is an appeal by the stockholders Thomas F. Coen, Jacob Huntzinger, Charles P. Helfenstein, and Edward P. Shaefer from the final order of the special term confirming the referee's report, and granting a dissolution of the corporation known as the "Santa Eulalia Silver Mining Company," and appropriating a receiver therefor, under title 11, c. 17, Code Civil Proc. §§ 2419–2431.

Argued before VAN BRUNT, P. J., and BRADY and MACOMBER, JJ.

*Edwin C. Ward* and *A. Bell Malcomson, Jr.*, for appellants. *Arnold & Green*, for respondents.

MACOMBER, J. The number of shares of stock of the corporation outstanding is 400,000, which, at $25 each, represents a capital of $10,000,000.

---

[1]Affirming 2 N. Y. Supp. 221.

One of the appellants, Charles P. Helfenstein, who owns 16,000 shares of the capital stock of the corporation, was present at a meeting of stockholders, when preliminary steps were taken for a voluntary dissolution of the corporation, and voted in favor of the resolution for such dissolution. The appellant Thomas F. Coen, who owns 700 shares of the capital stock of the corporation, has filed no exceptions to the report of the referee, and consequently, under rule 30 of this court, the report of the referee became absolute as to him, after the expiration of eight days from the filing thereof. *Catlin* v. *Catlin*, 2 Hun, 378. The other appellants, Huntzinger and Shaefer, own, respectively, 70 and 120 shares of the company's stock, amounting in all to the sum of $4,750, out of a total capital of $10,000,000. At the meeting of the stockholders above mentioned, 100,028 shares of the capital stock were represented and voted upon, 97,328 thereof being counted in favor of a voluntary dissolution of the corporation, and 2,700 shares against it. The evidence before the referee, which seems to have been thoroughly examined by the judge at special term, established quite conclusively that this corporation was in failing circumstances, and had been constantly losing money from the time of its organization, in 1880, up to the time of the filing of the petition for its dissolution. The trustees, it is true, were the main creditors, but they had become such through voluntary contributions on their part to maintain the corporation, and to extend its works, and to develop its mines in Mexico, to the end that it might' ultimately become a paying investment. They had thus advanced, without security, the sum of $246,563.05. The reports and letters of the superintendent of the works in Mexico, while they contain individual expressions of opinion of ultimate success over the difficulties encountered in the enterprise, exhibit uniformly a constant increase of expenses over income, and establish the fact that his expectations of better times were not likely to be realized.

But it is sought by the appellants to defeat this proceeding mainly upon two grounds, the first of which is that a majority of the trustees did not join in the petition to the court, as is required by Code Civil Proc. §§ 2419, 2422. This corporation, which was organized under the Laws of 1848, had seven trustees. The petition purports to be signed and verified by four of them. But it appears that the petitioner James C. Fargo did not at the time of the filing of the petition own in his own right any of the capital stock, but he is credited on the books of the company, as executor, with the ownership of 9,778 shares of such stock. Subsequently to the filing of the petition, and after objections seem to have been made to the regularity of the proceedings in this particular, a certain amount of stock was transferred to Mr. Fargo upon the books of the company in his own right; but manifestly this would not cure the defect of the initial proceeding, if indeed there was a defect. But, as it seems to me, all the rights appertaining to the ownership of the stock were vested in Mr. Fargo, although it was placed upon the books and appeared in the certificate to have been issued to him in his representative capacity as executor. This was distinctly decided in *Re Ferry Co.*, 63 Barb. 556. Indeed, except for section 16 of the act of 1848, (chapter 40,) which absolves executors, administrators, and trustees from personal liability by reason of the ownership of the stock of estates, he would be personally chargeable with liability, like any other stockholder. Moreover, Mr. Fargo had been permitted by the appellants and other stockholders to occupy the place of trustee unquestioned, and consequently they are estopped to deny that he is a trustee in fact, within the meaning of these provisions of the Code, particularly when the objection is raised collaterally. Another objection to the order appealed from is that the inventory which was annexed to the petition is not in conformity with the provision of the Code (section 2421) which requires that there be annexed to the petition a full, just, and true inventory of all of the property of the corporation, and a statement of all the books, vouchers,

and securities relating to the property of the corporation. The schedules containing the inventory of the property gives the amount of cash on hand in the New York office, and the amount in the Chihuahua office, and the number of book-accounts, supplemented by this statement: "All those certain mines, mining rights, and property, both real and personal, situated, lying, and being in the mineral district of Santa Eulalia, state of Chihuahua and republic of Mexico, and described as follows, namely." Then follows a minute and accurate description of all of the real estate owned by the company, by metes and bounds and quantity. It then describes the abandoned and ruined mines contained in the land mentioned, being the same property granted and conceded to John R. Robinson and associates by the congress of the said state of Chihuahua, by decree made on or about the 22d day of June, 1880, and possession of which property was, on the 24th day of June, 1880, pursuant to said decree, given to said John R. Robinson by Joaquim Villalba, second judge *de letras* of the judicial district of Iturbide, in said state. Then is given, in detail, the names of the mines which are situated in the mineral district of Santa Eulalia. The schedule then proceeds: "Together with the buildings and machinery thereon and situated, and all the mining rights and privileges and appurtenances belonging or in anywise appertaining to the mines and property above described, including all water-rights and privileges pertaining to and used in connection with said property, and also a railroad known as the 'Santa Eulalia Railroad,' running from the reduction works to the foot of the mountains, and used in connection with said mines, live-stock, teams, tools, implements, and supplies on hand in Mexico, of which there is no inventory here, and the exact amount of which is unknown." The books and vouchers and securities relating to the property of the corporation are also set out in detail, so far as they could be ascertained, or were known by the petitioners to exist. It is true, a witness for the petitioners said that he had no doubt but that there was a set of books in the company's office in Mexico that did not appear in this list, but from all of the testimony it appears that their contents had been substantially transcribed into the books of the company at New York. It is impossible to believe that there is any property of the company that would not fall under the description given in these schedules. Locomotives and rolling stock, it is true, have not been mentioned, yet the schedule includes all personal property within this mining district, and would necessarily include rolling stock. But the question is not whether there has been a technical and accidental omission in the schedules of some item of property, or of some book which the company possesses containing items of property; it is, rather, this: Does such omission, if it exists, show lack of good faith on the part of the petitioners, and afford evidence of any fraudulent purpose, or any attempt to impose upon the court? If it does not, the objection does not go to the jurisdiction of the court, and may be obviated by evidence, as was done in this case. The statute permitting this proceeding must indeed be strictly construed, and no intendment can be made in behalf of the petitioners beyond what naturally arises from the contents of the petition and schedules which they spread before the court. A perusal of the case does not leave the impression upon my mind that there exists any intention on the part of the petitioners to conceal the true condition of this corporation in any respect. It follows that the order appealed from should be affirmed, with costs and disbursements. All concur.