under which you were to be engaged?" That was objected to, on the ground that the conversation was merged in the letter from the defendant Ryer to Mr. Hart, which expressly described the terms of the employment; and that objection was sustained, on the ground that an agreement was made out in the correspondence, and that, unless something happened subsequently to change its terms, the question was not proper. We think it was error to exclude that question. As before stated, the contemporaneous construction which was given to this proposal, if it was accepted by the plaintiff, would be most material in determining the term for which the plaintiff was employed, and any conversation between the plaintiff and the defendants at any time was material in this connection. In addition to that, the defendant had denied the making of the contract, and had alleged a subsequent contract, different in terms from that alleged by the plaintiff, by which the defendant had the right to terminate the employment upon two weeks' notice. The defendant had the right to cross-examine the plaintiff as to this new agreement, and, while it might be within the discretion of the referee to refuse to allow such cross-examination at this stage of the trial, the ruling of the referee was not placed upon that ground, but upon the ground that an agreement had been made by the correspondence, and that it was incompetent to cross-examine the plaintiff, upon whose testimony reliance was placed to prove the correspondence.

There are many other exceptions to rulings of the referee upon questions of testimony. As there must be a new trial, the same questions may not be presented again, and it is not necessary that we should examine them.

The judgment should therefore be reversed, and a new trial ordered before another referee, with costs to the appellants to abide the event. All concur.

---

(9 App. Div. 546.)

### In re DIRECTORS OF MURRAY HILL BANK. (No. 760.)

(Supreme Court, Appellate Division, First Department. November 6, 1896.)

1. BANKS AND BANKING—VOLUNTARY DISSOLUTION—LIST OF CREDITORS

    The provision of Code Civ. Proc. § 2421, that the schedule annexed to a petition for voluntary dissolution of a corporation shall show, as far as petitioners "know or have the means of knowing," the name and residence of each creditor, or, if either of these is unknown, a statement to that effect, is complied with where the schedule to such a petition by the directors of a bank, whose property is in the possession of the superintendent of banks, states that it contains the required matter so far as known, and that there are "a number of other depositors whose names are unknown to petitioners," and gives the aggregate claims of all depositors.

2. SAME—VOLUNTARY DISSOLUTION AFTER SUPERINTENDENT OF BANKS HAS TAKEN POSSESSION.

    An order to show cause why a bank should not be dissolved, and appointing a temporary receiver, may be granted on application of the directors, though the superintendent of banks has previously taken possession of the bank's property and business under Laws 1892, c. 689, § 17 (Banking Act), as such statute authorizes him only to hold the property, and not to manage the bank's con-

cerns, or act for it in any way; and does not divest the directors of their powers except so far as is necessary to preserve the property pending an application in the name of the people for a receiver. Williams, J., dissenting.

Appeal from special term, New York county.

Application by a majority of the directors of the Murray Hill Bank for a voluntary dissolution of said bank. From an order directing all persons interested in the bank to show cause before a referee why the bank should not be dissolved, and that the order to show cause be published, and appointing Spencer Trask and Miles M. O'Brien temporary receivers of the property, assets, and effects of the bank, directing them to give security, and then to take possession of the property of the bank, and collect and receive the debts, demands, and other property of the bank, the attorney general and the superintendent of banks appeal. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

T. E. Hancock, Atty. Gen. (W. E. Kisselburgh, Jr., Dep. Atty. Gen., of counsel), for appellants.

Samuel Untermyer and James M. Smith (Louis Marshall, of counsel), for respondents.

INGRAHAM, J. This was a special proceeding commenced under section 2419 of the Code of Civil Procedure for a voluntary dissolution of the Murray Hill Bank. A petition for such voluntary dissolution was presented to the court on the 28th day of August, 1896, and an order was then granted requiring the attorney general to show cause on the 1st day of September why an order should not be made as provided for by section 2423 of the Code, and why a temporary receiver of the property of the corporation should not be appointed. Due service of a copy of the order to show cause, with the petition and schedules, was admitted by the attorney general, who appeared upon the return day of the order to show cause in opposition to the motion. An affidavit was presented on behalf of the attorney general by the superintendent of banks and his deputy, from which it appeared that in pursuance of section 17 of the banking act the superintendent of banks took possession of the Murray Hill Bank and its property and business on the 11th day of August, 1896, and that he still retains possession of the same. Upon the return day of such order the court granted the motion, appointed a referee, before whom all persons interested were required to show cause why the corporation, the Murray Hill Bank, should not be dissolved, appointed two receivers of the property, assets, and effects of the corporation, directed the said receivers to take possession of the property of the bank, collect and receive the debts, demands, and other property of the corporation, to preserve the same and the proceeds thereof, and to collect and receive all demands owing to said bank, with full power to maintain any action, suit, or special proceeding for either or all of said purposes without further leave, and enjoined the creditors and stockholders of said corporation from instituting or prosecuting any action or proceeding

against the corporation. From this order the attorney general has appealed.

The right of the attorney general to appeal from such an order without being made a party to the proceeding is conceded by counsel for the respondents; and, while the question is not free from doubt, it being somewhat difficult to see how a substantial right of the people is affected by the court's administering the property of this insolvent corporation in a proceeding for a voluntary dissolution of the corporation rather than in an action brought by the attorney general in the name of the people to accomplish the same purpose, we will assume that the order is appealable. The attorney general presents two grounds for a reversal of this order. The first is that the petition and schedules on which the order to show cause why the corporation should not be dissolved and a temporary receiver thereof appointed were insufficient to confer jurisdiction upon the court, upon the ground that a full list of the creditors of the corporation was not presented to the court, as required by section 2421 of the Code. The petition stated that annexed thereto is a schedule containing the name and place of residence of each creditor and of each person with whom such an engagement was made, and to whom it is to be performed, if known, or, if either is not known, a statement of that fact, as far as the petitioners know or have the means of knowing the same, in view of the facts that the books of the corporation are not at present in their possession or under their control, but are in the possession of the state superintendent of banks. And the schedule annexed to the petition states that it is a full and true account of all the creditors of the corporation and all unsatisfied engagements, with the name and place of residence of each creditor, and of each person with whom such an engagement was made, and to whom it was to be performed, if known, or, if either was not known, a statement of that fact, with a statement of the sum owing to each creditor, or other person specified, and the nature of each debt, demand, or other engagement; and at the end of such schedule there is a statement as follows: "A number of other depositors whose names are unknown to petitioners; the aggregate claims of all depositors named and not named amounting to about $1,031,000." We think that this was sufficient to give the court jurisdiction. Section 2421 of the Code provides: "A schedule must be annexed to the petition, containing the following matters, as far as the petitioner or petitioners know, or have the means of knowing the same." There is nothing to show that this schedule did not contain the name and place of residence of each creditor so far as the petitioners knew or had the means of knowing the same. On the contrary, the petitioners expressly state that such schedule does comply with this provision. In Re Santa Eulalia Silver Min. Co. (Sup.) 4 N. Y. Supp. 174, it was held that, if a technical and accidental omission in the schedules of some item of property, or some other omission to comply with the section of the Code, does not show a lack of good faith on the part of the petitioner, or afford evidence of any fraudulent purpose, or any attempt to impose upon the court, the objection does not go to the jurisdiction of the court, and

may be obviated by evidence. That case was affirmed by the court of appeals upon this opinion. See 115 N. Y. 657, 21 N. E. 1119. We think this decision disposes of this objection.

The attorney general also claims that the directors were not authorized to apply for a voluntary dissolution, as the fact that the superintendent of banks, in taking possession of the bank's property and business under section 17 of the banking law, took from the directors the property of the bank, so that they were no longer in the management of the concerns of the corporation. The mere possession of the property and business of the bank, however, by the superintendent, under this provision of the statute, did not divest the trustees or directors of the management of the concerns of the corporation, except so far as was necessary to preserve the property of the corporation pending an application to the court to appoint a receiver. The directors were still the responsible officers of the bank, liable for the faithful performance of their duties as such directors, and the only ones who could act for the corporation. Nothing in the act itself or any provision of law divested them of their office, or removed them from the position held by them. They were still the directors of the bank, and as such had the management of the concerns of the corporation. The corporation exists until the final judgment is entered dissolving it, and they were the only persons who could act for the corporation and manage its concerns. No provision of the statute authorizes the superintendent of banks to act for the corporation. He simply had power to take possession of the bank's property and business; not to manage its concerns, or act in any way for the bank. The provisions of the Code for voluntary dissolution of a corporation apply to all corporations created by or under the laws of the state, and no exception from the operation of such provisions is made of a banking corporation, the property and business of which have been taken possession of by the superintendent of banks. These provisions plainly include a banking corporation. And by section 2423 of the Code the court is authorized, in its discretion, at any stage in the proceeding, on motion of the petitioners on notice to the attorney general, or on motion of the attorney general on notice to the corporation, to appoint a temporary receiver of the property of the corporation. We think it clear that under this provision of the Code the court had jurisdiction to entertain the application, grant the order to show cause why the corporation should not be dissolved, and to appoint a temporary receiver of the property of the corporation. There certainly was no reason shown by the attorney general in opposition to the motion why that power should not be exercised. It is conceded that the bank was insolvent, and that the interests of its creditors and stockholders require that it should be wound up. No action by the people had been commenced; no other application for the appointment of a receiver was pending; and the only objection of the attorney general seems to be that he wished the receiver to be appointed in an action which he expected to bring, rather than in a proceeding brought by the directors of the bank. Our attention is called to

no reason which would prevent this corporation from being wound up as advantageously to its creditors and stockholders in this proceeding as in one instituted by the attorney general in behalf of the people, nor do the public interests appear to be at all involved. An order has been regularly entered in compliance with the provisions of law, by which the property of this corporation is vested in officers of the court for the benefit of its creditors and stockholders; and their interests seem to be seriously imperiled by the institution of an unnecessary proceeding by the attorney general, out of which appears to have arisen an unseemly dispute between him and the officers of this bank as to the method of procedure by which this corporation is to be dissolved, and its property applied to the payment of its debts.    This should not be encouraged. It is the duty of the court to protect the interests of the creditors of an insolvent corporation, and not to allow its assets to be wasted through a dispute between receivers appointed in different actions, or a dispute as to which particular course of procedure should be adopted, the sole object of which is the protection of creditors. As before stated, no suggestion has been made from which it appears that the creditors can be any better protected in an action brought by the attorney general than in the proceeding now before the court.    No suggestion is made that the public interests in any way require that we should refuse to entertain this application because at some future time the attorney general might commence an action to dissolve the corporation.    The court having jurisdiction of the proceeding, the interests of the creditors of this insolvent corporation require that it should promptly act; and its action under such circumstances was in all respects valid and proper in the orderly exercise of such jurisdiction.

We think the order was right, and should be affirmed, with $10 costs and disbursements.

VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ., concur.

WILLIAMS, J. (dissenting).    The facts are undisputed, and are as follows:    August 11, 1896, the bank superintendent, having examined the affairs of the bank, arrived at the conclusion not only that there had been an impairment of the capital, and that the bank was in an unsound and unsafe condition to do banking business, but that it was insolvent, its liabilities exceeding its assets by more than $230,000, and it had closed its doors, and suspended its ordinary and lawful business. . Thereupon the bank superintendent on that day took possession of the property and business of the bank, under the provisions of section 17, c. 689, of the banking act of 1892.    Thereafter, and on the 28th of August, 1896, the directors instituted proceedings for the voluntary dissolution of the bank, under the provision of section 2419 et seq., Code Civ. Proc.    A petition was made by the majority of the directors, and upon such petition and accompanying papers an order was made by a justice of the court on that day, directing the attorney general of the state to show cause Sep-

tember 1, 1896, at a special term in New York City, why the usual order should not be granted requiring all persons interested in the bank to show cause why the bank should not be dissolved, and why a temporary receiver should not be appointed, and directing the order to show cause to be served upon the attorney general on or before August 29, 1896.   August 31, 1896, the attorney general prepared a summons and complaint, and had the latter verified in an action in the name of the people against the bank, to procure the dissolution, and the appointment of a receiver.   On the return of the order to show cause, September 1, 1896, the matter was heard at special term in New York City, Mr. Justice Pryor presiding.   The attorney general objected to the making of any order in the proceedings, and especially to the appointment of any receiver, by reason of the bank superintendent having taken possession of the books, papers, and assets of the bank, under the provisions of section 17 of the banking act.   The court, however, made an order September 2, 1896, from which order this appeal is taken.   The statute under which the bank superintendent took possession of the property (Banking Act 1892, § 17) provides that the bank superintendent may take possession of the property, and retain such possession until the termination of the action or proceedings instituted by the attorney general, such as are authorized in the case of insolvent corporations. Discretion was, then, clearly given to the bank superintendent, which he had the right to exercise, and which the court had no power to deprive him of.   The banking act is an act relating solely to banks, while the provisions of the Code of Civil Procedure relate generally to all corporations, and provide proceedings for their voluntary dissolution.   The banking act was the later expression of the legislative will, and it provides a scheme especially for the care of banks.   So far as its provisions are inconsistent or conflict with the general provisions of the Code, the latter provisions must be held to be modified, and must give way.   Clearly, the scheme of section 17 was to give the bank superintendent, in his discretion, the custody and control of the property of a bank pending proceedings by action or otherwise instituted by the attorney general.   He exercised the discretion, and took possession of this property, and had them in his custody when the proceedings for voluntary dissolution were commenced.   The directors of the bank apparently conceived the idea of influencing the closing up of the bank and taking the property away from the bank superintendent, and they sought to make use of the proceedings for voluntary dissolution to accomplish their purpose.   It seems to me they could not accomplish their purpose by any such means.   While the provisions of the Code as to the voluntary dissolution of corporations very likely apply to banks as well as other corporations, still they must give way in the case of banks to these provisions of the banking law which are inconsistent or in conflict with them.   It may be doubtful if the proceedings for voluntary dissolution could be instituted at all, under the provisions of the Code, after the property and business of the bank had been taken possession of and were held by the bank superintendent; the provision being "that a majority of the directors, trustees, and other

officers having the management of the concerns of a corporation may make a petition," etc. But, even if they could be, still the court had no power in such proceedings to appoint receivers, or compel the delivery of the property and assets of the bank to such receivers, without the consent of the bank superintendent. The banking law confers the power upon the bank superintendent to determine whether he should hold the property to await the determination of the proceedings instituted by the attorney general, and the court could not, in these proceedings, interfere with the custody and control of the property by the bank superintendent without his consent. The bank superintendent was regarded by the legislature as more competent, from his position and knowledge of banking matters, to determine this question, than the court; and the clear design of the banking act was to leave this question to him, and not to the court.

For these reasons I am of the opinion that the order appealed from should be reversed, with costs, and the motion denied, with costs; or that the order appealed from should be modified by striking out all provisions as to the receivers, and, as modified, affirmed, without costs.