allowed to introduce any such rebuttal evidence. The case thus stood practically in the position that both sides had presented their evidence, and rested.

The motion for a direction of a verdict could therefore be properly entertained and decided by the court. Of course, the question remained, and has been fully examined on this appeal, whether the ruling made by the court thereon was right. We think it was, and that the judgment entered thereon should be affirmed, with costs. All concur.

(33 App. Div. 154.)

HAINES v. KINDERHOOK & H. RY. CO. et al.

(Supreme Court, Appellate Division, First Department. August 10, 1898.)

1. RAILROADS—REORGANIZATION—AUTHORITY OF COMMITTEE.

Under the terms of a plan of reorganization, approved by the bondholders of a railway company, 60 per cent. of the stock to be issued was registered in the names of, and issued to and held by, the reorganization committee and their successors, with power of voting thereon, until such time, not to exceed five years, as the condition of the road should, in their judgment, warrant the distribution thereof among the bondholders. It was also provided that the committee might act by a vote of the majority. Two of the nine members died. *Held,* in an action brought during the five years to restrain the survivors from voting on the stock, that, as they had the legal title thereto, they were entitled to vote on it.

2. CORPORATIONS—DIRECTORS.

The rule that a stockholder ceases to be a director when he parts with his stock has no application to one who, though he has parted with his individual holdings, still retains the title to stock held by him as a trustee.

Appeal from special term, New York county.

Action by Charles D. Haines against the Kinderhook & Hudson Railway Company and others. From an order denying plaintiff's motion for a temporary injunction (52 N. Y. Supp. 1061), he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

John Delahunty, for appellant.
L. H. Bevans, for respondents.

RUMSEY, J. The plaintiff is a stockholder of the Kinderhook & Hudson Railway Company, and he brings this action on his own behalf, and on behalf of all the stockholders similarly situated. The Kinderhook & Hudson Railway Company is a railroad company organized under the laws of this state before the 27th day of April, 1896. Before that time the property afterwards owned by that company had been owned and operated by the Kinderhook & Hudson Railway. It was heavily incumbered, and steps were taken by the bondholders to procure a foreclosure of the bonds. For that purpose a committee was appointed, by whom the foreclosure was procured to be begun. That committee submitted to the bondholders a "plan of reorganization," as it was called, by which it was provided that, in the event of the purchase of the mortgaged property by the committee,

a reorganization committee should be created, of whom the defendants Parsons, Rainey, Hosford, Stott, Henry M. Sage, Dean Sage, and Traver were a majority, and the only ones now living. As originally organized, the committee consisted of two more persons, both of whom, it is conceded, have died. The agreement for reorganization is contained in the complaint which is printed in the case, and it provides for the organization of the Kinderhook & Hudson Railway Company, and for the management of its affairs for a certain time. Among other provisions of the plan of reorganization, to which nearly all the bondholders were parties, it is provided that 40 per cent. of the stock of the Kinderhook & Hudson Railway Company should be distributed pro rata among the bondholders, and the remainder, of 60 per cent., should be registered in the names of, and issued to, and held by the reorganization committee and their successors, with power of voting thereupon, until such time, not to exceed five years from the date of the sale of the property, as the condition of the road should, in their judgment, warrant the distribution thereof among the bondholders, their respective representatives, or their assigns of such stock. It was further provided that the reorganization committee might act by a vote of a majority, and, up to the time of the organization of the board of directors of the reorganized corporation, might fill vacancies in its membership. The complaint further alleged that the members of the reorganization committee who were still living had sold all of their individual stock, and were no longer stockholders or stockholders of the railway company, although it was conceded that they still held the 60 per cent. of the stock which had been issued to them, collectively, as members of the reorganization committee, and which they held solely under the power given by the reorganization agreement. It was further alleged that the railway was in good condition, was doing a good business,—more than sufficient to pay the interest on its bonds,—and that its condition was such as to entitle the bondholders to have distributed among them and their assigns the remaining 60 per cent. of the stock of said railway, as provided for in the said plan of reorganization, in paragraph 7, but that the defendants refused to make such distribution. The plaintiff claimed, also, that he had procured proxies, and a right to vote upon a large portion of that stock, from those persons who by the terms of the reorganization plan would be entitled to share in it upon its final distribution; and he insisted upon his right to vote, at a stockholders' meeting, upon that stock. It was alleged further in the complaint that a stockholders' meeting was called to be held on the 12th day of April, 1898, and that the persons still living, who constituted a majority of the reorganization committee, insisted upon their right to vote upon the stock by virtue of the authority given to them by the seventh clause of the reorganization scheme. This action, which was begun on the 7th of April, 1898, had for its object to restrain those members of the reorganization committee from voting on the 60 per cent. of stock held by them in trust under the plan of reorganization, and for a further judgment that they, having sold the stock which they individually had in the company, were no longer stockholders thereof, and were no longer members of the reorganization committee, or entitled, as such

53 N.Y.S.—24

members, to act as directors, nor were they entitled longer to hold the 60 per cent. of the stock. The defendants, in their answer, insist that the plaintiff is still bound by the plan of reorganization, and that the majority of the reorganization committee have a right to vote upon the stock held by them under that plan. They deny that the condition of the railway is such as entitled the bondholders to have 60 per cent. of the stock distributed. They allege that they are the owners of said stock, as trustees, and therefore legally entitled to vote upon the same. The answer contains many other allegations, which it is not now necessary to notice. Upon these papers, and upon affidavits, the plaintiff moved for an injunction restraining the members of the reorganization committee from voting at the meeting to be held on the 12th of April. This motion was denied, and from the order denying it this appeal is taken.

It is alleged in the complaint and admitted in the answer that, pursuant to the provisions of paragraph 7 of the plan of reorganization, there was issued to the members of the reorganization committee, in their capacity as such, 60 per cent. of the stock of this railway company, and that that stock now stands in their names upon the books of the company. These gentlemen have therefore the legal title to that stock, and as such it hardly needs the citation of authorities to establish their right to vote upon it. In re North Shore Staten Island Ferry Co., 63 Barb. 556; In re Santa Eulalia Silver Min. Co. (Sup.) 4 N. Y. Supp. 174, affirmed 115 N. Y. 657, 21 N. E. 1119. This stock is held by them as members of the committee, and, by the express terms of the contract under which they act, a majority of the committee is authorized to act. So long, therefore, as they are properly the holders of this stock, they are at liberty to vote upon it, because they are the owners of it, and the right to vote upon stock necessarily follows the legal title. But, in addition to that, they are, by the express terms of paragraph 7 of the plan of reorganization, given the power of voting upon that stock for five years, if the condition of the road is, in their judgment, such as to require that they should hold it without distribution so long. In every aspect of the case, the right of these gentlemen to control this stock and vote upon it seems to be unquestionable.

It is alleged by the plaintiff that the time has come when the stock should be distributed, and that the members of the reorganization committee have refused to distribute it. It is sufficient to say upon that point that it is left to the discretion of a majority of that committee whether they shall distribute the stock at any time before five years; and even if the court were at liberty to review that discretion, and to compel a distribution of the stock, it could only do so upon proof being made that the discretion had been abused, and that the right had arisen on the part of the bondholders to have the stock distributed. No such facts are made to appear here. No reason is shown why these gentlemen should not continue to exercise their legal rights as owners of this stock, and the power given to them by the seventh section of the plan of reorganization. It is said that because they have sold their individual stock they have ceased to be directors of the corporation, and have no longer the right to act as such. Upon that

point it is sufficient to say that as they still have the legal title to this 60 per cent. of the stock, although they hold it as trustees, they are, by virtue of that title, stockholders of the corporation; and for that reason the rule of law laid down in the case of Bank v. Colwell, 132 N. Y. 250, 30 N. E. 644, that a stockholder ceases to be a director when he parts with his stock, has no application.

We think the court below was correct in refusing an injunction. The order must be affirmed, with $10 costs and disbursements.    All concur.